VICTOR KUBIT, SANJAY B. SHAH, LARRY DALE WITHERS AND CUMBERLAND ANESTHESIA ASSOCIATES, PA, PLAINTIFFS v. MAG MUTUAL INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, AMERICAN ECONOMY INSURANCE COMPANY, AMERICAN STATES INSURANCE COMPANY, CINCINNATI INSURANCE COMPANY, UNITED STATES FIDELITY & GUARANTY COMPANY, TRAVELERS PROPERTY & CASUALTY COMPANY OF AMERICA, TRAVELERS INDEMNITY COMPANY AND VIREN DESAI, DEFENDANTS

No. COA09-1056

(Filed 15 March 2011)

**1. Insurance— coverage under policy—employees of named insured—insured**

Defendant insurance companies MAG Mutual's and American's argument that the individual plaintiffs were not insureds under the policies was overruled. The individual plaintiffs were employees of the named insured and the actions that formed the bases of the complaint involved actions undertaken while the individual plaintiffs were performing duties related to the conduct of the named insured's business.

**2. Insurance— duty to defend—negligent misrepresentation— bodily injury—claim not covered**

Defendant insurance companies did not have a duty to defend plaintiffs against complainant's negligent misrepresentation claim because the claim did not fall within the policies' bodily injury coverage.

**3. Insurance— duty to defend—defamation—personal injury —claim not covered**

Defendant insurance companies had a duty to defend plaintiffs against complainant's defamation claim. The claim fell within the policies' coverage for personal injury and no exclusions were applicable.

**4. Insurance— duty to defend—defamation—negligent misrepresentation—quality assurance activities**

Defendant insurance company MAG had a duty to defend plaintiffs in a negligent misrepresentation and defamation case because complainant's factual allegations were based in part on the individual plaintiffs' quality assurance activities.

KUBIT v. MAG MUT. INS. CO.

[210 N.C. App. 273 (2011)]

### 5. Insurance— duty to defend—notice of action—actual notice—timely notice not received—no duty

Where plaintiffs failed to give proper notice of a complaint filed against them to an agent of defendant insurance companies American and Cincinnati, the insurers' duty to defend plaintiffs did not arise until the insurers themselves received notice. Moreover, where defendant Travelers insurance companies did not receive timely notice of the action, those carriers were relieved of their duty to defend.

Appeal by plaintiffs from orders entered 5 March 2009, 9 March 2009, and 10 March 2009 by Judge E. Lynn Johnson in Cumberland County Superior Court. Heard in the Court of Appeals 11 February 2010.

*Smyth & Cioffi, LLP, by Theodore B. Smyth, for plaintiffs-appellants.*

*Ellis & Winters LLP, by J. Donald Cowan, Jr. and Stephen C. Keadey, for defendant-appellee MAG Mutual Insurance Company.*

*Cranfill Sumner & Hartzog LLP, by Susan K. Burkhart, for defendant-appellee Cincinnati Insurance Company.*

*Womble Carlyle Sandridge & Rice, PLLC, by Garth A. Gersten, for defendants-appellees Travelers Property & Casualty Company of America, Travelers Indemnity Company, and United States Fidelity & Guaranty Company.*

*Moreau & Marks, PLLC, by Daniel C. Marks, for defendants-appellees American Economy Insurance Company and American States Insurance Company.*

GEER, Judge.

Plaintiffs Victor Kubit, Sanjay B. Shah, and Larry Dale Withers (collectively "the individual plaintiffs"), along with Cumberland Anesthesia Associates, PA, appeal from the trial court's orders denying their motions for summary judgment and granting summary judgment in favor of the defendant insurance carriers. Plaintiffs contend that the trial court erred in concluding that the defendant insurers had no duty to defend plaintiffs in a tort action brought by Wayne Welsher, M.D. We affirm the trial court's orders in part and reverse in part.

**KUBIT v. MAG MUT. INS. CO.**

[210 N.C. App. 273 (2011)]

Applying the comparison test set out in *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986), we agree with plaintiffs that insurers MAG Mutual Insurance Company; American Economy Insurance Company and American States Insurance Company (collectively "American"); and Cincinnati Insurance Company all had a duty to defend plaintiffs in the underlying action. That duty arose, however, only when the insurers were given actual notice of the underlying complaint. Because we have concluded that plaintiffs have failed to establish that they gave proper notice to an agent of American or Cincinnati, the insurers' duty did not arise until the insurers themselves received notice.

As for United States Fidelity & Guaranty Company, Travelers Property & Casualty Company of America, and Travelers Indemnity Company (collectively "Travelers"), there is no dispute that Travelers did not receive notice of the Welsher action until more than eight months after the Welsher action was filed. Since plaintiffs have failed to offer any reason for their failure to timely notify Travelers of the action, we are compelled to conclude that those carriers were relieved of their duty to defend because of plaintiffs' failure to give Travelers timely notice of the Welsher action.

Facts

On 3 July 2006, Dr. Welsher, a cardiothoracic and vascular surgeon at Cape Fear Valley Medical Center ("the Hospital"), filed suit against the individual plaintiffs and Dr. Viren Desai (collectively "the individual anesthesiologists"). The individual anesthesiologists were members of Cumberland Anesthesia, a medical practice that provided anesthesia services at the Hospital. The Welsher complaint included causes of action for defamation, tortious interference with contract, tortious interference with prospective economic advantage, intentional or negligent infliction of emotional distress, and unfair and deceptive trade practices.

The Welsher complaint alleged that the individual anesthesiologists engaged in a series of "conspiratorial acts" in order "to destroy Dr. Welsher's practice, to interfere with his relationships with his patients, hospital staff, and referral physicians, and to have him removed from the Hospital." In particular, the Welsher complaint alleged that after the individual anesthesiologists joined Cumberland Anesthesia in 2001, they instituted new rules of operation at the Hospital regarding the provision of anesthesia services. Dr. Welsher

alleged that the individual anesthesiologists retaliated against him when he opposed the rules as being contrary to patient safety.

The complaint further alleged that the individual anesthesiologists tried to persuade or intimidate other hospital staff members to join them in their efforts to have Dr. Welsher removed from the Hospital. According to the complaint, the individual anesthesiologists intentionally created "a hostile environment for Dr. Welsher, repeatedly challenging his decisions and undermining his authority." The complaint claimed that as a result of the individual anesthesiologists filing "patently erroneous and hostile" and "false and malicious" complaints, the Medical Executive Committee of the Hospital summarily suspended Dr. Welsher's privileges for a period of 30 days in 2002. Finally, the complaint asserts that, taken together, the individual anesthesiologists' actions "caused irreparable harm to Dr. Welsher's reputation and practice."

The defendant insurance companies that provided coverage to Cumberland Anesthesia received notice of the Welsher complaint at different times. Plaintiffs contend that MAG Mutual received notice on 7 July 2006, four days after the Welsher complaint was filed, when Catherine Green, the Practice Manager of Cumberland Anesthesia, faxed the complaint to MAG Insurance Agency. Plaintiffs contend that Cincinnati and American received notice on 28 September 2006 when Ms. Green faxed the complaint to an insurance agency, Insurance Service Center of Fayetteville. Cincinnati and American dispute whether Insurance Service Center was their agent and whether the notice to the agency was sufficient to provide them with notice. Cincinnati contends that it did not receive notice until 26 March 2007, while American argues that it only received notice on 9 July 2007. It is undisputed that Travelers received notice of the Welsher complaint on 21 March 2007.

Plaintiffs had retained Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP to defend the Welsher action. Upon receiving notice of the action, Travelers agreed to provide a defense to plaintiffs under a complete reservation of rights, and the defense was transferred to Yates McLamb & Weyher. Travelers paid all of the attorneys' fees and costs charged by Yates McLamb & Weyher. The record indicates that Dr. Welsher voluntarily dismissed his action without prejudice in August 2007 and did not subsequently re-file his complaint.

On 12 May 2008, plaintiffs filed this action against MAG Mutual, Cincinnati, American, Travelers (collectively "defendants"), Federal

**KUBIT v. MAG MUT. INS. CO.**

[210 N.C. App. 273 (2011)]

Insurance Company, and Dr. Desai.[1] With respect to the insurance carriers, plaintiffs alleged a claim for breach of contract based on the carriers' failure to provide a defense or to indemnify plaintiffs for defense costs they incurred in defending the Welsher action. In the alternative, Cumberland Anesthesia sought to recover damages from Dr. Desai for breaching his agreement to pay a portion of the total defense costs.[2]

MAG Mutual filed a motion for summary judgment against plaintiffs on 30 December 2008, seeking a declaratory judgment that MAG Mutual had no duty to defend the Welsher complaint. Plaintiffs, in turn, filed a motion for summary judgment against defendants on 4 February 2009, seeking a declaratory judgment that defendants all had a duty to defend the Welsher complaint. Cincinnati, on 6 February 2009, and American, on 9 February 2009, also filed summary judgment motions seeking declaratory judgments that they had no duty to defend plaintiffs.

On 5 March 2009, the trial court entered an order granting MAG Mutual's motion. On 9 March 2009, the trial court denied plaintiffs' motion for summary judgment as to Travelers and entered summary judgment in favor of Travelers pursuant to Rule 56(c) of the Rules of Civil Procedure. The trial court granted American's motion for summary judgment also on 9 March 2009. Cincinnati's motion for summary judgment was allowed on 10 March 2009. Plaintiffs timely appealed to this Court.

## Discussion

Our Supreme Court has observed that "the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy." *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377. This duty to defend "is ordinarily measured by the facts as alleged in the pleadings." *Id.* "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* An insurer is excused from its

---

1. The Statement of Jurisdiction in the Record on Appeal states that this action was filed on 12 May 2008. The Record on Appeal, however, includes an "Amended Complaint" as the pleading filed on 12 May 2008.

2. Plaintiffs and Dr. Desai later mutually stipulated to a dismissal without prejudice. Plaintiffs also voluntarily dismissed with prejudice the complaint against Federal Insurance Company. Dr. Desai and Federal Insurance Company are not parties to this appeal.

duty to defend only "if the facts are not even arguably covered by the policy." *Id.* at 692, 340 S.E.2d at 378.

In our Supreme Court's most recent decision on the duty to defend, the Court explained that in order to answer the question whether an insurer has a duty to defend, we apply the " 'comparison test,' reading the policies and the complaint 'side-by-side . . . to determine whether the events as alleged are covered or excluded.' " *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 6, 692 S.E.2d 605, 610 (2010) (quoting *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 378). In performing this test, "the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend." *Id.* at 7, 692 S.E.2d at 611.

The Supreme Court stated in *Waste Management*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2 (emphasis added), that "allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose *a mere possibility* that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insured." This Court subsequently relied upon this language as holding that if the "pleadings allege multiple claims, some of which may be covered by the insurer and some of which may not, the *mere possibility* the insured is liable, and that the potential liability is covered, may suffice to impose a duty to defend." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 735, 504 S.E.2d 574, 578 (1998) (emphasis added). *See also Naddeo v. Allstate Ins. Co.*, 139 N.C. App. 311, 319, 533 S.E.2d 501, 506 (2000) (holding that pleadings which disclose " 'mere possibility' " that potential liability is covered suffice to impose duty to defend upon insurer (emphasis omitted) (quoting *Waste Mgmt.*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2)).

It appears, however, that the Supreme Court's *Harleysville* decision has changed the law:

> In addressing the duty to defend, *the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy*; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury. The manner in which the duty to defend is "broader" than the duty to indemnify is that the statements of fact upon which the duty to defend is based may not, in reality, be true. As we observed in *Waste*

*Management*, "[w]hen the pleadings state facts demonstrating that the alleged injury *is covered* by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." [*Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377] (emphasis added) (citations omitted).

*Harleysville*, 364 N.C. at 7, 692 S.E.2d at 611 (first emphasis added). Under *Harleysville*, the duty to defend is broader than the duty to indemnify *only* "in the sense that an unsubstantiated allegation requires an insurer to defend against it so long as the allegation is of a covered injury; however, even a meritorious allegation cannot obligate · an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy." *Id.*

*Harleysville* does not specifically address and nothing in its language appears to revisit the following caveat to the comparison test set out in *Waste Management* imposing a duty on the insurance carrier to investigate:

Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage. In this event, the insurer's refusal to defend is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of the defense. This is not to free the carrier from its covenant to defend, but rather to translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay. In addition, many jurisdictions have recognized that the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources. Even though the insurer is bound by the policy to defend groundless, false or fraudulent lawsuits filed against the insured, if the facts are not even arguably covered by the policy, then the insurer has no duty to defend.

*Waste Mgmt.*, 315 N.C. at 691-92, 340 S.E.2d at 377-78 (internal citations and quotation marks omitted).

This Court has held, citing this part of *Waste Management's* holding, that "[a]lthough the insurer's duty to defend an action is generally determined by the pleadings, facts learned from the insured and facts discoverable by reasonable investigation may also be considered." *Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 96 N.C. App. 635, 638, 386 S.E.2d 762, 764, *disc. review denied*, 326 N.C. 595, 393 S.E.2d 876 (1990). The Court in *Duke University* determined that, "[t]herefore," affidavits filed by the plaintiff explaining what actually occurred during an accident—contrary to allegations in the underlying complaint— were "relevant to the determination of defendant's duty to defend." *Id.* Since *Harleysville* did not overrule this portion of *Waste Management* or *Duke University*, we remain bound by this authority.

I.  Qualification of Individual Plaintiffs as "Insureds" under the Policies

[1] As an initial matter, MAG Mutual and American contend that the individual plaintiffs were not insureds under the policy. Each of the policies identified Cumberland Anesthesia as the only "named insured." As a result, in order for the individual plaintiffs to be entitled to a defense, they must come within the definition of an "insured" contained in the policies.[3] The policies define the term "insured" as follows:

> 1.  If you [Cumberland Anesthesia] are designated in the Declarations as:
>
>     . . . .
>
>     d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. . . ."
>
> 2.  Each of the following is also an insured:
>
>     a.  . . . your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

3.  The policies contain substantially the same language.

KUBIT v. MAG MUT. INS. CO.

[210 N.C. App. 273 (2011)]

The individual plaintiffs presented evidence in an affidavit by plaintiff Dr. Kubit that each of them was a director of and employed by Cumberland Anesthesia during the times alleged in the underlying complaint. The question is, therefore, whether the actions that formed a basis for the complaint (1) involved their duties as directors, (2) were within the scope of their employment, or (3) occurred while they were performing duties related to the conduct of Cumberland Anesthesia's business.

The business of the named insured, Cumberland Anesthesia, was providing anesthesia and related services in Cumberland County, including at the Hospital. Among other allegations, the underlying complaint challenged new rules promulgated by Cumberland Anesthesia and the individual anesthesiologists relating to their provision of anesthesia services; alleged that the individual anesthesiologists retaliated against Dr. Welsher for his opposing their rules, which he contended were inappropriate; alleged that the individual anesthesiologists wrote false medical notes regarding what occurred in operations to counter notes written by Dr. Welsher; and alleged that the individual anesthesiologists made groundless complaints regarding the quality of Dr. Welsher's surgical work and the professionalism of his behavior at the Hospital.

In support of their argument that they qualify as insureds under the policies, the individual plaintiffs point to Dr. Kubit's affidavit, in which he stated that "[a]ll activity undertaken by them as described herein, was authorized by Cumberland Anesthesia Associates, PA, as part of an ongoing desire by both Cumberland Anesthesia Associates, PA and Cape Fear Valley Medical Center to provide the best quality health care services and patient safety to their mutual patients." The Kubit affidavit further stated, apparently with respect to actions by the individual anesthesiologists in connection with the Hospital's peer review activities and committees, that the anesthesiologists "were performing these duties as licensed physicians with privileges at Cape Fear Valley Medical Center, with the specific consent and authority of their anesthesiology group, Cumberland Anesthesia Associates, PA."

The Welsher complaint's allegations—including the promulgation and enforcement of rules, the writing of medical notes, and the making of complaints in connection with peer review activities approved by the named insured—involve acts undertaken while the individual anesthesiologists were "performing duties related to the conduct of

[Cumberland Anesthesia's] business" of providing anesthesia and related services at the Hospital. Since this activity falls within the definition of an "insured" employee, we need not address whether the alleged conduct involved the individual anesthesiologists' duties as directors.

In arguing otherwise, both MAG Mutual and American point to cases involving sexual assaults by school employees. *See Medlin v. Bass,* 327 N.C. 587, 398 S.E.2d 460 (1990), and *Durham City Bd. of Educ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 109 N.C. App. 152, 426 S.E.2d 451, *disc. review denied,* 333 N.C. 790, 431 S.E.2d 22 (1993). Although *Medlin* did not involve a question of insurance coverage, the Supreme Court emphasized that "[w]here the employee's actions conceivably are within the scope of employment and in furtherance of the employer's business, the question is one for the jury." 327 N.C. at 593, 398 S.E.2d at 463. The Court nonetheless concluded that, for purposes of *res judicata,* a principal was not acting within the scope of his employment when he sexually assaulted a student because the principal could only be advancing a completely personal objective, and "[t]he assault could advance no conceivable purpose of [the Board of Education]." *Id.* at 594, 398 S.E.2d at 464.

In *Durham City Board of Education,* this Court addressed whether a school employee who had taken a student to his home and sexually assaulted her was an insured under the Board of Education's insurance policy. According to the language of the policy, the employee would only be covered if the acts alleged to have been committed by him had occurred while he was acting within the scope of his duties as an employee of the school district. 109 N.C. App. at 157, 426 S.E.2d at 454. Applying *Medlin,* this Court concluded that the employee's sexual assault was not within the scope of his employment and, therefore, the carrier had no duty to defend the employee. *Durham City Bd. of Educ.,* 109 N.C. App. at 157-58, 426 S.E.2d at 454.

We cannot conclude that the allegations in the Welsher complaint are analogous to a school employee's sexual assault. The allegations do not establish that the individual anesthesiologists were acting to advance purely personal objectives as opposed to objectives related to their employment with Cumberland Anesthesia. In contrast to both *Medlin* and *Durham City Board of Education,* the alleged actions could conceivably advance a purpose of Cumberland Anesthesia. The Welsher complaint does not include any allegation suggesting a personal agenda for any of the individual anesthesiologists unrelated

to the business of Cumberland Anesthesia. Indeed, the complaint contains a number of allegations suggesting that the individual anesthesiologists were acting to allow Cumberland Anesthesia to gain influence and control at the Hospital. Accordingly, we hold that MAG Mutual and American's argument that the individual plaintiffs were not insureds was not a proper basis for granting summary judgment to those carriers.

II.  Coverage of Alleged Acts Under the Policy

Plaintiffs contend that defendants had a duty to defend because the acts alleged in the Welsher complaint fall within the policies' coverage for "bodily injury," "personal injury," and, as to the MAG Mutual policy, quality assurance activities. We address each of the different types of coverage in turn.

Under North Carolina law, "the insured . . . has the burden of bringing itself within the insuring language of the policy. Once it has been determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Hobson Constr. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985). "Exclusionary clauses are interpreted narrowly while coverage clauses are interpreted broadly to provide the greatest possible protection to the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 542-43, 350 S.E.2d 66, 71 (1986).

A. *Bodily Injury*

[2] Plaintiffs argue that the Welsher complaint's claim for negligent misrepresentation falls within the policies' bodily injury coverage. Defendants' policies all provided coverage for "bodily injury" arising out of an "occurrence." The policies generally define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies also excluded coverage for "bodily injury" expected or intended from the standpoint of the insured. Defendants MAG Mutual, American, and Cincinnati all argue that no duty to defend exists because either the Welsher complaint did not allege an "occurrence" or the allegations fall within the exclusion for intended/expected injuries. Travelers does not make this argument.

Where, as here, the term "accident" is not defined in an insurance policy, it is construed to include " 'injury resulting from an intentional

act, *if the injury is not intentional or substantially certain to be the result of the intentional act.*' " *Am. Mfrs. Mut. Ins. Co. v. Morgan*, 147 N.C. App. 438, 441, 556 S.E.2d 25, 28 (2001) (quoting *Russ v. Great Am. Ins. Cos.*, 121 N.C. App. 185, 188, 464 S.E.2d 723, 725 (1995), *disc. review denied*, 342 N.C. 896, 467 S.E.2d 905 (1996)), *cert. denied*, 355 N.C. 747, 565 S.E.2d 191 (2002). " '[I]f an intentional act is either intended to cause injury or substantially certain to result in injury, it is not an occurrence under the policy definitions . . . and no coverage is provided.' " *Id.* (quoting *Henderson v. U.S. Fid. & Guar. Co.*, 124 N.C. App. 103, 110, 476 S.E.2d 459, 464 (1996), *aff'd as modified on other grounds*, 346 N.C. 741, 488 S.E.2d 234 (1997)). This Court held in *State Auto Insurance Cos. v. McClamroch*, 129 N.C. App. 214, 220, 497 S.E.2d 439, 443 (1998), that an intent to injure "may be inferred where the act is substantially certain to result in injury."

We believe that *McClamroch* controls as to the issue of coverage for bodily injury. In *McClamroch*, the carrier sought a declaration that it had no duty to defend the defendants who had been sued for picketing a physician's home in order to cause him to cease performing abortions. *Id.* at 215, 497 S.E.2d at 440. The insureds contended that the carrier had a duty to defend them because the underlying complaint, although including various intentional causes of action, also asserted a claim for negligent infliction of emotional distress. The insureds argued that this negligence claim fell within the coverage for bodily injury. This Court, in holding that the negligence claim did not give rise to a duty to defend, explained:

> [The insureds] were intentionally engaged in targeted residential picketing with the intent of inflicting sufficient emotional distress to coerce [a physician] from engaging in the legal, though controversial, activity of performing abortions. *An intent to injure is the only logical conclusion to be inferred from defendants' conduct. The addition of the negligence claim is not sufficient to invoke coverage, because the amended complaint merely alleges. " 'but a different characterization of the same wilful act . . . .' " Eubanks* [*v. State Farm Fire & Cas. Co.*], 126 N.C. App. [483,] 489, 485 S.E.2d [870,] 873[, *disc. review denied*, 347 N.C. 265, 493 S.E.2d 452 (1997)]. The [physician and his wife] have simply "recast their allegations of intentional conduct under a heading of negligence." Accordingly, we hold that the intentional acts exclusion of the insurance contract applies and summary judgment was properly granted.

*Id.* at 220-21, 497 S.E.2d at 443 (emphasis added).

In this case, the Welsher complaint similarly alleged a systematic and intentional course of conduct "with the ultimate goal of having Dr. Welsher removed from the Hospital's medical staff." Dr. Welsher's allegations refer only to intentional conduct, the very nature of which leads to one conclusion: that the defendants (plaintiffs in this action) intended to injure Dr. Welsher. Indeed, as in *McClamroch*, the alleged purpose of the conduct in this case was to cause sufficient emotional distress to coerce Dr. Welsher into withdrawing from or being forced to leave his practice. Like the negligent infliction of emotional distress claim in *McClamroch*, Dr. Welsher's negligent misrepresentation claim does nothing more than re-label the same intentional conduct as negligence. The mere fact that the tort complaint "recasts" the intentional acts into a claim for negligence does not trigger coverage or a duty to defend. Thus, no duty to defend arose from the claim of bodily injury, because the facts alleged in the Welsher complaint fall under the intentional injury exclusion.

We further conclude that the Welsher complaint did not allege an occurrence. The injuries alleged in this case were substantially certain to result from the individual plaintiffs' intentional acts, and, therefore, the duty to defend was not triggered under the policies. *See N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 709, 412 S.E.2d 318, 325 (1992) (holding that if intentional act is either intended to cause injury or "substantially certain" to result in injury, it is not an occurrence under policy, and there is no coverage).

B. *Personal Injury*

[3] Next, plaintiffs argue that defendants had a duty to defend based on the Welsher complaint's defamation claim for relief because the claim falls within the coverage for "personal injury." Each of defendants' liability and umbrella policies provided coverage for "[p]ersonal and advertising injury" arising out of one or more of the following offenses: "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

Plaintiffs correctly point out that this Court has upheld coverage of intentional torts, including defamation, when the policy has specifically listed the intentional tort in coverage provisions like the ones in this case regarding "personal injury." In *Stanback v. Westchester Fire Insurance Co.*, 68 N.C. App. 107, 114-15, 314 S.E.2d 775, 779

(1984) (emphasis added), this Court recognized that when a policy "define[s] 'personal injury' to include false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, *libel and slander*[,] . . . clearly intentional torts," a conflict exists between the coverage provisions and any exclusion for intentional torts. The Court held that, because a policy must be given the construction most favorable to the insured and since the insurance company chose the language, "the apparent conflict between coverage and exclusion must therefore be resolved in favor of [the insured] . . . ." *Id.* at 115, 314 S.E.2d at 779.

Since defendants' policies specifically state that they cover "[o]ral or written publication, in any manner, of material that slanders or libels a person," plaintiffs have established that Dr. Welsher's claim for defamation falls within the coverage of the policies for "personal injury." MAG Mutual and American, however, contend that "personal injury" coverage is unavailable because of the policies' exclusion for damages "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury' " and for damages "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

Despite their specific reliance upon these two exclusions, MAG Mutual and American, in their briefs, focus on the intentional nature of the acts. American argues that no coverage exists because the Welsher complaint alleges "that the individual anaesthesiologists knew and intended that their statements and conduct would cause injury to Dr. Welsher's personal and professional reputation. In fact, that was their purpose and goal as alleged by Dr. Welsher." MAG Mutual similarly argues that "as alleged in the Welsher Complaint, the Plaintiff-Appellants knew and intended that their conduct would cause injury to Dr. Welsher's professional reputation." Because of the policies' express coverage of the intentional torts of slander and libel, the fact that plaintiffs may have acted intentionally is immaterial.

Instead, the exclusions upon which MAG Mutual and American rely require (a) knowledge that the statements made would "violate the rights of another" and inflict "personal or advertising injury" or (b) knowledge that the statements were false. While the first exclusion includes intentional infliction of injury, it also requires a knowing violation of a person's rights. *See Burlington Ins. Co. v. Superior Nationwide Logistics, Ltd.*, 783 F. Supp. 2d 958, 964, 2010 WL

3155916, *5, 2010 U.S. Dist. LEXIS 80648, *12 (S.D. Tex. Aug. 10, 2010) (unpublished) ("Thus, in this instance where NATCO has alleged defamation as a 'personal and advertising injury,' Policy coverage for Defendants is excluded if the insured both (1) knows that the statement would violate another's rights, and (2) knows that the statement would inflict damage to another's reputation."). As for the second exclusion, coverage would still exist for a truthful statement made knowing, or even intending, that it would injure a person. *See Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Group, Inc.*, 2007 WL 1290138, *9, 2007 U.S. Dist. LEXIS 21456, *26 (D. Neb. Mar. 12, 2007) (unpublished) (holding that identical exclusion did not apply if "allegedly false representations were either made without knowledge of falsity or were not false").

The central question as to the exclusions at issue is, therefore, whether the Welsher complaint alleges any facts permitting the conclusion that the individual anesthesiologists did not know that their statements regarding Dr. Welsher were false and did not know that they were violating Dr. Welsher's rights and inflicting "personal and advertising injury," which is defined as including slandering or libeling a person or disparaging the person's services. There is no question that the Welsher complaint does contain numerous allegations that the individual anesthesiologists made "malicious falsehoods," "baseless accusations," and "baseless allegations" against Dr. Welsher that were "patently false," and "false and malicious."

On the other hand, other allegations regarding injurious statements by the individual plaintiffs do not necessarily require the conclusion that the individual plaintiffs knew the statements were false or that they knew the statements violated Dr. Welsher's rights. The Welsher complaint specifically alleges in the defamation cause of action that "[the individual anesthesiologists] made the statements negligently, with knowledge that they were false, and/or with reckless disregard as to whether or not they were false." As discussed in connection with the "bodily injury" coverage, the fact that a plaintiff attempts to re-label intentional conduct as negligent or reckless is not binding for coverage purposes if the specific conduct at issue is only intentional conduct. Nevertheless, here, the complaint contains a number of allegations regarding false statements that could have been made negligently or with reckless disregard as to the truth of the statements.

The Welsher complaint's allegation that "[a]t every opportunity, [the individual anesthesiologists] and others criticized Dr. Welsher"

KUBIT v. MAG MUT. INS. CO.

[210 N.C. App. 273 (2011)]

does not require that these criticisms were knowingly false or a knowing violation of Dr. Welsher's rights. The complaint refers to multiple incidents in which a dispute arose between Dr. Welsher and one of the individual anesthesiologists during a surgery, Dr. Welsher wrote an allegedly "accurate" note in the patient's chart regarding what happened, and the individual anesthesiologist "documented his version of the events," which was false. The complaint also describes another occasion in which some of the anesthesiologists filed complaints with the Hospital because Dr. Shah "believ[ed] that Dr. Welsher had communicated to the [patient's] family and others that he canceled the surgery due to Dr. Shah's conduct," an allegation that suggests a lack of knowledge that the complaint was false. The complaint also distinguishes between "malicious falsehoods" and "unfounded complaints," with the latter potentially being the result of negligence or reckless disregard for the truth.

Thus, although the Welsher complaint contained numerous allegations that fell within the exclusions, it also contained allegations supportive of the defamation claim that arguably did not fall within the exclusions. As a result, the Welsher complaint includes allegations supporting its defamation claim that are covered and not excluded by the policies, and MAG Mutual and American had a duty to defend the defamation claim. *Waste Mgmt.*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2.

Cincinnati, on the other hand, concedes that "[t]he slander claim in the [Welsher action] falls within the definition of 'personal and advertising injury' in the Cincinnati Policy as an enumerated 'defamation' offense."[4] The carrier argues, however, (1) that the Welsher complaint fails to allege slander that occurred within its policy period or (2) that any claim would fall within its policy's prior publication exclusion. Cincinnati's policy period began on 20 May 2006.

The Welsher complaint did not include allegations regarding any distinctly identified statements made within Cincinnati's policy period. The last event specifically described occurred in April 2006. Nevertheless, the Welsher complaint alleges that "Dr. Welsher has also recently learned that Defendants *have contacted and continue to contact* the physicians who comprise Dr. Welsher's referral base and those physicians to whom he makes referrals." (Emphasis added.) According to the complaint, these contacts involved efforts

---

4. Travelers, the remaining carrier, makes no argument regarding the coverage for "personal injury."

to stop referrals through "malicious and false statements." The complaint further alleges that the individual anesthesiologists have "continue[d] their efforts to this day[] to destroy Dr. Welsher's practice, to interfere with his relationships with his patients, hospital staff, *and referral physicians*, and to have him removed from the Hospital." (Emphasis added.) Since the Welsher complaint was filed on 3 July 2006, we believe that the alleged continuing and "ongoing" slander preceding that date would arguably fall within the Cincinnati policy coverage period. Therefore, Cincinnati was not exempted from its duty to defend on this ground.

Cincinnati next points to the prior publication exclusion for slander "[a]rising out of oral or written publication of material whose first publication took place before . . . inception of this policy." In *Superformance International Inc. v. Hartford Casualty Insurance Co.*, 332 F.3d 215, 224 (4th Cir. 2003), the Fourth Circuit concluded that this exclusion applied when the facts in the underlying complaint "ma[d]e clear that any false advertising or disparagement that [could] be inferred from the . . . claims first occurred before the policy period."

In this case, numerous statements were made prior to Cincinnati's policy period. Nevertheless, a carrier's duty to defend is not excused by this exclusion simply because statements amounting to personal or advertising injury were made both before and after the commencement of a policy period. In *Harleysville Mutual Insurance Co. v. Buzz Off Insect Shield, L.L.C.*, 190 N.C. App. 28, 35, 664 S.E.2d 317, 321 (2008), *rev'd in part on other grounds and disc. review improvidently allowed in part*, 364 N.C. 1, 692 S.E.2d 605 (2010), the carrier's policy commenced on 20 June 2004. The carrier argued that the prior publication exclusion applied because the underlying complaint alleged that the false advertising at issue had first begun in August 2003. This Court concluded that there was a duty to defend notwithstanding the prior publication exclusion because there were "new press releases" containing false advertising as late as 15 September 2004. *Id.*

Here, if, as the Supreme Court's decision in *Harleysville* requires, we take as true the allegations that the individual anesthesiologists continued "to this day" to contact Dr. Welsher's referral physicians, making "malicious and false statements," then there were "new" publications following the inception of Cincinnati's policy period. The complaint's allegations did not indicate that the new publications were simply republications of prior statements.

**KUBIT v. MAG MUT. INS. CO.**

[210 N.C. App. 273 (2011)]

It is not sufficient that the statements made before the commencement of coverage are similar in content to those made after 5 May 2006. The statements in *Harleysville* were similar. Instead, the prior publication exclusion "is intended to and in fact bars coverage of an insured's continuous or repeated publication of *substantially the same* offending material previously published at a point of time before a policy incepts, while *not* barring coverage of offensive publications made during the policy period which *differ in substance* from those published before commencement of coverage." *Ringler Assocs. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1183, 96 Cal. Rptr. 2d 136, 150-51 (2000). *See also Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1343 n.5 (S.D. Fla. 2001) (holding that duty to defend existed despite prior publication exclusion because "[c]onduct which is merely similar is deemed insufficient to trigger this exclusion" and "there is a question raised as to whether the advertising injury activity which occurred during the policy term involved simple republication of pre-policy inception activity, or instead was merely 'similar' to it in theme or content").

The burden of establishing the applicability of the prior publication exclusion rested on Cincinnati. Because the allegations of the Welsher complaint do not establish that the statements made prior to 5 May 2006 were substantially the same as those made afterwards, Cincinnati had a duty to defend based on the defamation cause of action notwithstanding the prior publication exclusion.

C. *Quality Assurance Activities*

[4] Plaintiffs also argue that MAG Mutual had a duty to defend because the Welsher complaint's factual allegations were based in part on the individual plaintiffs' quality assurance activities. In addition to the Businessowner's Policy and the Umbrella Policy, MAG Mutual issued a Physicians and Surgeons Liability Policy to Cumberland Anesthesia. The "Quality Assurance Coverage" provision of the Physicians and Surgeons Liability Policy provided as follows:

We'll cover you for your quality assurance activities when performed for the purposes of evaluating and improving the quality of healthcare services and for patient safety. We'll cover you when you participate as a member, a witness or a clinical practice advisor of a formal credentialing, peer review, or quality assurance board or committee formed by an organization for the purposes of improvement of patient safety or the quality of healthcare services delivered to patients.

MAG Mutual argues that the Welsher complaint's allegations are not sufficient to give rise to a duty to defend because they do not allege "that any of the individual Defendants were serving as a member, witness or clinical practice advisor of a peer review committee." Plaintiffs, however, argue that the provision sets out two types of coverage, and MAG Mutual has addressed only one. First, the policy states "[w]e'll cover you" for "quality assurance activities" for specified purposes and, second, the policy states "[w]e'll cover you" for participation in certain capacities related to a formal credentialing, peer review, or quality assurance board or committee. Applying the well-established principle that "coverage clauses are interpreted broadly to provide the greatest possible protection to the insured," *State Capital Ins.*, 318 N.C. at 542-43, 350 S.E.2d at 71, we hold that this provision provides coverage for two separate types of activities. This conclusion is also required by "the rule of construction which requires us to construe all ambiguities in favor of coverage." *Duke Univ.*, 96 N.C. App. at 641, 386 S.E.2d at 766.

Because MAG Mutual focuses only on the second sentence of the coverage provision, the carrier does not explain why the complaint fails to fall within the first sentence's coverage. According to the Welsher complaint, the individual anesthesiologists "peppered" or "littered" Dr. Welsher's "peer review file" with complaints. The Welsher complaint further alleges that the Hospital's Medical Executive Committee acted on these complaints in 2002, summarily suspending Dr. Welsher's privileges for a period of 30 days. The complaint specifically alleges that "[a] summary suspension is typically reserved for situations in which a physician poses an imminent danger to his patients." The complaint acknowledges that the Hospital ultimately "rendered its final decision affirming the suspension . . . ." In addition, the complaint alleges that, in 2005, the individual anesthesiologists "continued their attack on Dr. Welsher's privileges at the Hospital" by making another complaint based on an incident during surgery. The complaint states that "[a]s with the first peer review action on his privileges, the Hospital's investigation of this complaint was clearly inadequate."

These allegations refer to quality assurance activities relating to the quality of healthcare services and patient safety. They do not, however, indicate that the actions were taken for the purposes specified in the coverage provision. While the Welsher complaint alleges that these actions were undertaken to remove Dr. Welsher from the Hospital and to retaliate against him, it is undisputed that Cumberland

Anesthesia faxed MAG Mutual a copy of the Welsher complaint with a cover sheet stating that the Welsher lawsuit was "ultimately about a challenge to Welsher's peer review file." MAG Mutual and plaintiffs, however, vigorously disagree regarding what Cumberland Anesthesia told MAG Mutual in a subsequent telephone call about whether the complaint implicated the quality assurance coverage.

MAG Mutual submitted the affidavit of Ben Bowman, a Senior Litigation Specialist with MAG Mutual, who spoke with Ms. Green. Mr. Bowman claimed that he asked Ms. Green whether any of the Cumberland Anesthesia physicians "were named as defendants in the Welsher action for their work as a" member of, a witness before, or a clinical practice advisor of a formal credentialing, peer review, or quality assurance board or committee. Mr. Bowman stated that Ms. Green answered "[n]o." Mr. Bowman then stated that he "did not have any further conversations with Ms. Green[], or anyone else at [Cumberland Anesthesia], regarding the Welsher action."

MAG Mutual, through Mr. Bowman, therefore, only inquired about the second type of quality assurance coverage even though it was on notice that the allegations involved peer review activities. Mr. Bowman could, with a proper inquiry, have learned through reasonable investigation that, as Dr. Kubit stated in his affidavit, the actions of the individual anesthesiologists were "for the betterment of health care services and patient safety at [the Hospital], relating to Dr. Welsher." We hold that MAG Mutual "*could reasonably [have] ascertain[ed]* facts that, if proven, would be covered by its policy." *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377 (emphasis added). Consequently, it had a duty to defend plaintiffs even though the Welsher complaint alleged purposes for plaintiffs' actions that would "appear to be outside coverage." *Id.*

III. Compliance with the Policies' Notice Provision

[5] Finally, Cincinnati, American, and Travelers argue that even if their policies provided coverage for factual allegations contained in the Welsher complaint, plaintiffs breached a policy provision requiring them to give notice "as soon as practicable" or "as soon as possible" as a precondition to coverage.[5] Cincinnati and American contend that they had no obligation to defend plaintiffs until they received actual notice and dispute when that notice was received. Travelers contends that its duty to defend was completely excused by plaintiffs' failure to provide timely notice.

_____

5. MAG Mutual does not make any argument as to this issue.

**KUBIT v. MAG MUT. INS. CO.**

[210 N.C. App. 273 (2011)]

A. *Timing of Cincinnati and American's Duty to Defend*

As an initial matter, we address the parties' contentions regarding the point at which an insurer's duty to defend attaches: Does it attach when the insurer receives notice or when a claim is filed? We recognize that jurisdictions are divided as to this issue. The majority of jurisdictions, however, hold that the duty to defend is triggered when the insurer receives notice of the underlying complaint. *See, e.g., Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 596 (E.D.N.C. 1999) (concluding that insurer's duty to defend is triggered when insurer first receives notice of lawsuit and not when complaint is filed), *aff'd per curiam*, 213 F.3d 634 (4th Cir. Apr. 28, 2000) (unpublished); *Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 294 (Tex. Ct. App. 2007) ("Because an insurer's duty to defend is triggered by notice, the insurer has no duty to reimburse the insured for defense costs incurred before the insured gave the insurer notice of the lawsuit."), *review denied*, 2008 Tex. LEXIS 48 (Jan. 11, 2008); *Great Am. Ins. Co. v. Aetna Cas. & Sur. Co.*, 76 Haw. 346, 352, 876 P.2d 1314, 1320 (1994) ("[U]nder Hawaii law, Aetna had no duty to contribute to defense costs incurred prior to its receiving notice of the underlying action."); *Rovira v. LaGoDa, Inc.*, 551 So. 2d 790, 794 (La. Ct. App. 1989) ("The duty to defend arises when the insurer receives notice of the litigation."), *cert. denied*, 556 So. 2d 36 (La. 1990).

In view of our courts' repeated emphasis on the importance of an insurer's "ability to investigate and defend" claims against its insured—*see, e.g., Great Am. Ins. Co. v. C. G. Tate Constr. Co.*, 303 N.C. 387, 390, 279 S.E.2d 769, 771 (1981) (*"Great American I"*)—we adopt the majority rule. We, therefore, hold that, in North Carolina, the duty to defend arises when an insurer receives actual notice of the underlying action.

In this case, plaintiffs allege that on 28 September 2006, they notified Cincinnati and American of the Welsher complaint by giving notice to Insurance Service Center, which they allege is an insurance agent for Cincinnati and American. It is well established that notice of a potential claim given to an insurance agent constitutes notice to the insurer. *Blue Bird Cab Co. v. Am. Fid. & Cas. Co.*, 219 N.C. 788, 797, 15 S.E.2d 295, 301 (1941). Plaintiffs assert that Cincinnati and American's duty to defend was, therefore, triggered on 28 September 2006.

Cincinnati and American contend, however, that (1) plaintiffs presented no evidence that Insurance Service Center is their agent,

and (2) plaintiffs presented no admissible evidence that they actually gave Insurance Service Center notice of the Welsher complaint. According to Cincinnati, it did not actually receive notice until 26 March 2007. American asserts that any duty it had to defend plaintiffs was not triggered until it received notice of the Welsher complaint on 9 July 2007.

While both Cincinnati and American assert in their briefs that plaintiffs presented no evidence identifying Insurance Service Center as their agent, the declaration pages of their policies do in fact list Insurance Service Center as the agent or agency.[6] In the face of this evidence, neither Cincinnati nor American have cited any evidence that Insurance Service Center was not their agent, even though both carriers submitted affidavits specifically addressing the issue of notice.

Cincinnati and American contend that, even if Insurance Service Center was their agent, the notice given to Insurance Service Center was inadequate. Plaintiffs, in arguing that notice was received by the two carriers on 28 September 2006, primarily rely on one of their responses to MAG Mutual's interrogatories. That response indicates that, in conjunction with "a fax from Cumberland Anesthesia," Ms. Green spoke to Shannan Milner, "the principal contact person" at Insurance Service Center, "on or about" 28 September 2006 "about the litigation and requested a defense."

Although the individual plaintiffs verified the response, Ms. Green did not, and there is no suggestion in the record that the individual plaintiffs had personal knowledge of the content of any fax to or conversation Ms. Green had with Insurance Service Center regarding the Welsher complaint. Necessarily, someone must have told one of the individual plaintiffs what Ms. Green said in her conversation with Ms. Milner.

The description of that conversation in the interrogatory is, therefore, hearsay, and hearsay statements contained in interrogatory responses are inadmissible. *See* N.C.R. Civ. P. 33(b) (providing that interrogatory "answers may be used to the extent permitted by the rules of evidence"); *Corda v. Brook Valley Enters., Inc.*, 63 N.C. App.

---

6. In its brief, Cincinnati asserts that its declaration page, unlike MAG Mutual's, "does *not* list any 'agent.'" The page cited following this claim is not the Cincinnati declaration page, however. Plaintiffs, on the other hand, have referred the Court to a Cincinnati declaration page that does identify Insurance Service Center as the agency for the policy.

653, 657, 306 S.E.2d 173, 176 (1983) (affirming trial court's exclusion of interrogatory answers that could not be based upon personal knowledge); *Byrd v. Hopson*, 265 F. Supp. 2d 594, 602 (W.D.N.C. 2003) (holding that interrogatory answers describing conversations participated in by someone other than person answering interrogatories were "inadmissible hearsay"), *aff'd in part, rev'd in part*, 108 F. App'x. 749 (4th Cir. 2004).

Plaintiffs urge that any hearsay problem was cured by Dr. Kubit's affidavit in which he stated that "[u]pon being served with process in the underlying Welsher Lawsuit the various insurance companies named as defendants in this action were notified of the lawsuit as set forth in Answer to Interrogatory NO. 3 of Plaintiffs' Answers to Defendant MAG Mutual Insurance Company's First Set of Interrogatories." There is no indication, however, that the information in this paragraph is based on personal knowledge. *See* N.C.R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

Plaintiffs point to the second paragraph of Dr. Kubit's affidavit as establishing the necessary personal knowledge: "I am also familiar with and have access to the business records of Cumberland Anesthesia Associates, PA, relating to the procurement of a defense of the Welsher Lawsuit . . . , which were maintained in the ordinary course of business by Cumberland Anesthesia Associates, PA." There is, however, no suggestion in either the affidavit or the interrogatory answer that there was ever a record of Ms. Green's call or that Dr. Kubit specifically reviewed such a record.

Even assuming Dr. Kubit reviewed records regarding Ms. Green's call or any notice to Insurance Service Center, his affidavit does not address the necessary foundational requirements for the admission of a "business record" under Rule 803(6) of the Rules of Evidence. As a result, he has failed to establish personal knowledge for the statements in his affidavit that are based on Cumberland Anesthesia's records. *See Gilreath v. N.C. Dep't of Health & Human Servs.*, 177 N.C. App. 499, 503-04, 629 S.E.2d 293, 296 (holding that " '[k]nowledge obtained from the review of records, qualified under Rule 803(6), constitutes "personal knowledge" within the meaning of Rule 56(e),' " but " '[i]f . . . the affiant obtained information from a written record and the record did not comply with requirements of the business records

KUBIT v. MAG MUT. INS. CO.

[210 N.C. App. 273 (2011)]

exception to the hearsay rule, this information would . . . not be based on the affiant's personal knowledge' " (quoting *Hylton v. Koontz,* 138 N.C. App. 629, 635 & n.3, 532 S.E.2d 252, 256, 257 & n.3 (2000), *disc. review denied,* 353 N.C. 373, 546 S.E.2d 603 (2001))), *disc. review denied and cert. denied,* 360 N.C. 576, 635 S.E.2d 595, *aff'd per curiam,* 361 N.C. 109, 637 S.E.2d 537 (2006).

Alternatively, plaintiffs point to a fax of the Welsher complaint that Cumberland Anesthesia sent to Insurance Service Center on 4 October 2006 in connection with a renewal application for Cumberland Anesthesia's employment practices liability insurance with Evanston Insurance Company. In a statement accompanying the renewal application, Cumberland Anesthesia was asked whether all employment practices liability claims, including suits filed during the last 12 months, had been reported. A check in the "Yes" box is marked out, and the "No" box is checked. The next preprinted line says, "If No, provide details[,]" after which is written: "Case filed against 4 current/former employees by surgeon—we filed motion to dismiss—granted in part—case attached, pending."

In other words, plaintiffs are contending that they gave notice to Cincinnati and American of the Welsher complaint by reporting the lawsuit to Evanston Insurance Company, through Insurance Service Center, as part of a renewal of a wholly unrelated insurance policy. The rule imputing the knowledge of an agent to its principal is not, however, so broad as to permit a determination that this communication constituted notice to Cincinnati and American.

" '[A] principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends, although the agent does not in fact inform his principal thereof.' " *Rea v. Hardware Mut. Cas. Co.,* 15 N.C. App. 620, 625, 190 S.E.2d 708, 712 (quoting *Norburn v. Mackie,* 262 N.C. 16, 24, 136 S.E.2d 279, 285 (1964)), *cert. denied,* 282 N.C. 153, 191 S.E.2d 759 (1972). *See also Thomas-Yelverton Co. v. State Capital Life Ins. Co.,* 238 N.C. 278, 281-82, 77 S.E.2d 692, 694 (1953) ("The rule with respect to the knowledge of an agent being imputable to his principal is well stated in the case of *[National Life] Insurance Co. v. Grady,* [185 N.C. 348, 351, 117 S.E. 289, 291 (1923)], in the following language: 'In the absence of fraud or collusion between the insured and the agent, the knowledge of the agent when acting within the scope of the powers entrusted to him will be imputed to the company . . . .' ").

**KUBIT v. MAG MUT. INS. CO.**

[210 N.C. App. 273 (2011)]

Here, Cumberland Anesthesia was communicating with Insurance Service Center in its capacity as agent for Evanston Insurance Company in reference to a matter—renewal of an insurance policy—over which Insurance Service Center had been granted authority by Evanston. The evidence does not support a finding that Insurance Service Center was, under these circumstances, acting within the scope of any authority granted by Cincinnati or American or that the renewal—the matter at issue—related to such authority. While general notice of the existence of a lawsuit to an insurance agency acting as an agent for multiple carriers might be sufficient to provide notice to the various carriers, we need not resolve that question because that fact pattern is not present here.[7]

We hold that under the circumstances of this case, Cumberland Anesthesia's communication to Insurance Service Center in connection with the Evanston Insurance Company renewal application did not provide notice of the Welsher action to Cincinnati and American. Since plaintiffs present no other evidence of an earlier notice date, we hold that Cincinnati's duty to defend was not triggered until 26 March 2007, and American's duty to defend was not triggered until 9 July 2007.

B. *Travelers' Duty to Defend in Light of Breach of Notice Provision*

There is no dispute that plaintiffs first notified Travelers of the Welsher complaint on 21 March 2007. In contrast to Cincinnati and American, Travelers argues that plaintiffs' breach of the timely notice provision in Travelers' policies altogether exempts Travelers from any duty to defend plaintiffs.

In *Great American I*, 303 N.C. at 390, 279 S.E.2d at 771 (emphasis added), the Supreme Court held that "an unexcused delay by the insured in giving notice to the insurer of an accident does not relieve the insurer of its *obligation to defend* and indemnify unless the delay operates materially to prejudice the insurer's ability to investigate and defend." In *Great American I* and *Great American Insurance Co. v. C. G. Tate Construction Co.*, 315 N.C. 714, 340 S.E.2d 743 (1986) ("*Great American II*"), our Supreme Court established a three-prong test for determining when a delay in providing notice relieves an insurer of its duty to defend and indemnify:

7. Although American argues that the notice was not sufficient because Cumberland Anesthesia did not expressly request a defense, we do not address that issue.

KUBIT v. MAG MUT. INS. CO.

[210 N.C. App. 273 (2011)]

"When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, *e.g.*, that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay."

*Great American II*, 315 N.C. at 717-18, 340 S.E.2d at 746 (quoting *Great American I*, 303 N.C. at 399, 279 S.E.2d at 776).

With respect to the first prong—"whether there has been any delay in notifying the insurer"—the Supreme Court has noted that "[i]n most instances, unless the insurer's allegations that notice was not timely are patently groundless, this first part of the test is met by the fact that the insurer has introduced the issue to the court." *Great American II*, 315 N.C. at 719, 340 S.E.2d at 747. Travelers thus met the first prong by raising the issue of plaintiffs' failure to notify Travelers of the Welsher complaint until 21 March 2007.

As to step two, where "any period of delay beyond the limits of timeliness" has been shown, the insured bears the burden of showing that such delay was in good faith. *Great American I*, 303 N.C. at 399, 279 S.E.2d at 776. "This test of lack of good faith involves a two-part inquiry: 1) Was the insured aware of his possible fault, and 2) Did the insured purposefully and knowingly fail to notify the insurer?" *Great American II*, 315 N.C. at 720, 340 S.E.2d at 747.

Travelers points out that plaintiffs were clearly aware of their possible fault in the Welsher action—they notified MAG Mutual of the Welsher complaint a mere four days after it was filed. Yet, Travelers asserts, plaintiffs never presented an explanation to the trial court for their over eight-month delay in notifying Travelers of the Welsher complaint. This omission has continued on appeal—plaintiffs still have made no attempt to explain their delay in giving notice to Travelers. In their brief, with regard to the issue of when Travelers received notice, plaintiffs merely state in a footnote: "[Travelers] hired a law firm to transition into the case to provide a defense as soon as they received notice."

Since plaintiffs have apparently never made any argument that they did not knowingly and purposefully fail to notify Travelers from July 2006 through March 2007, the good faith test is not met. Thus, the

burden does not shift to Travelers to show that its ability to investigate and defend was materially prejudiced by the delay. Travelers, we conclude, did not have a duty to defend plaintiffs against the Welsher complaint.

## Conclusion

We have concluded that MAG Mutual, American, and Cincinnati all had a duty to defend with respect to the Welsher complaint based on their policies' "personal injury" coverage. MAG Mutual also had a duty to defend as a result of its quality assurance coverage. MAG Mutual's duty was triggered as of 7 July 2006. Cincinnati's duty to defend did not arise until 26 March 2007, while American's duty to defend did not arise until 9 July 2007. Plaintiffs' failure to provide Travelers with timely notice relieved Travelers of its duty to defend. Thus, we affirm the trial court's order as to Travelers, but reverse as to MAG Mutual, American, and Cincinnati.

Affirmed in part; reversed in part.

Judges CALABRIA and STEPHENS concur.