[Cite as *Lexington Ins. Co. v. DunnWell, L.L.C.*, 2016-Ohio-5311.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LEXINGTON INSURANCE COMPANY

    Plaintiff

    v.

DUNNWELL, LLC, et al.

    Defendant/Appellee/Cross-Appellant

    v.

WEST BEND MUTUAL INSURANCE
COMPANY, et al.

    Defendants/Appellees/
    Cross-Appellants

C.A. No.     27476

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2012 03 1741

DECISION AND JOURNAL ENTRY

Dated: August 10, 2016

---

CARR, Judge.

{¶1}　Appellants, West Bend Mutual Insurance Co. and ABCO Fire Protection, Inc., and cross-appellants, DunnWell, LLC. and Travelers Casualty Indemnity Co., appeal the judgment of the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands.

I.

{¶2}　MAC Acquisition, LLC, dba Macaroni Grill, contracted with DunnWell to provide cleaning and inspection services to MAC's restaurant's kitchen exhaust systems. DunnWell subcontracted with ABCO to provide those services to MAC. ABCO agreed to add

DunnWell as an additional insured on its commercial liability insurance policy relevant to its work as a subcontractor for DunnWell. West Bend as ABCO's insurance company, therefore, insured ABCO as its insured and DunnWell as an additional insured. Although DunnWell also maintained insurance coverage through its carrier Travelers, any applicable coverage through West Bend was designated as primary. Shortly after one of ABCO's scheduled maintenance and inspections at Macaroni Grill, a fire broke out at the restaurant, causing significant property damage. Lexington Insurance Co., which insured MAC, paid the restaurant's damages claim. Lexington then filed a complaint in case number 2012-03-1741 against DunnWell and Travelers, and ABCO and West Bend, alleging various negligence and breach claims, and seeking compensatory and consequential damages, as well as declaratory judgment. In addition to denying the allegations in Lexington's complaint, DunnWell and ABCO each filed cross-claims against the other, alleging, among other things, claims for indemnification and contribution. In addition, DunnWell prayed for a judgment that ABCO defend it against all of MAC's claims.

{¶3} Subsequently, in case number 2013-03-1400, ABCO and West Bend filed a complaint against DunnWell and Travelers, seeking declaratory judgment. Specifically, ABCO/West Bend sought declarations that DunnWell was not entitled to a defense, indemnification, or contribution under the subcontractor indemnification provision; or that in the case of ABCO's partial negligence, DunnWell was entitled to only partial defense, indemnification, or contribution; and that DunnWell was not entitled to coverage as an additional insured under the West Bend policy to the extent that Macaroni Grill put the oven exhaust systems to their intended use or because DunnWell's acts or omissions in connection with its general supervision of ABCO was the sole proximate cause of the fire. DunnWell answered and counterclaimed for declaratory judgment, seeking declarations that (1) ABCO owes DunnWell

defense and indemnity pursuant to the parties' subcontractor agreement, and (2) West Bend owes DunnWell defense and indemnity pursuant to the insurance policy issued by West Bend to ABCO describing DunnWell as an additional insured. Travelers filed a separate answer to the ABCO/West Bend complaint but did not raise any counterclaims.

{¶4} The parties moved to consolidate case number 2013-03-1400 into case number 2012-03-1741, and the court granted the consolidation. Subsequently, DunnWell/Travelers and ABCO/West Bend filed competing motions for summary judgment solely on the issues of whether ABCO and West Bend owed DunnWell a defense and indemnity. The parties opposed each other's motions. The trial court issued a judgment in which it declared that the parties' March 3, 2009 subcontractor agreement was operative at the time of the fire; that the indemnification provision contained therein did not violate North Carolina's anti-indemnification statute; and that ABCO, therefore, was required to indemnify and defend DunnWell in the underlying litigation. The trial court declined to issue any declaration, however, regarding whether DunnWell was entitled to coverage (and presumably indemnity and defense) as an additional insured under the West Bend insurance policy. In declining to declare the parties' rights and obligations under the insurance policy, the trial court concluded that there were genuine issues of material fact as to whether ABCO's work caused the fire and whether one of the policy's exceptions to coverage applied to bar West Bend's duty to indemnify and defend DunnWell. The court certified the judgment pursuant to Civ.R. 54(B) as a final, appealable order.

{¶5} ABCO appealed, raising three assignments of error for review. DunnWell and Travelers filed a cross-appeal, raising one assignment of error for review.

Jurisdiction

{¶6} As a preliminary matter, this Court is obligated to raise sua sponte questions related to our jurisdiction. *Whitaker-Merrell Co. v. Geupel Constr. Co., Inc.*, 29 Ohio St.2d 184, 186 (1972). This Court has jurisdiction to hear appeals only from final judgments. Article IV, Section 3(B)(2), Ohio Constitution; R.C. 2501.02. "For a judgment to be final and appealable, the requirements of R.C. 2505.02 and Civ.R. 54(B), if applicable, must be satisfied." *LEH Properties, Inc. v. Pheasant Run Assn.*, 9th Dist. Lorain No. 07CA009275, 2008-Ohio-4500, ¶ 10, citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88 (1989). R.C. 2505.02(B)(2) states that "[a]n order that affects a substantial right made in a special proceeding" is a "final order that may be reviewed, affirmed, modified, or reversed[.]" Where a case involves multiple claims or multiple parties, Civ.R. 54(B) allows a trial court to issue a final judgment that can immediately be appealed "only upon an express determination that there is no just reason for delay." In the absence of a final, appealable order, this Court must dismiss the appeal for lack of subject matter jurisdiction. *Lava Landscaping, Inc. v. Rayco Mfg., Inc.*, 9th Dist. No. 2930-M, 2000 WL 109108 (Jan. 26, 2000).

{¶7} The parties in this case sought declarations regarding their respective rights and obligations relating to the duty to indemnify and defend. The Ohio Supreme Court has held that "[t]he duty to defend involves a substantial right to both the insured and the insurer." *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17 (1989), paragraph one of the syllabus. The high court reasoned that the risk of adverse economic and other consequences arising from situations both (1) where the indemnitor wrongfully refuses to defend so that the indemnitee is forced to settle to mitigate costs or later pursue additional litigation to recoup its costs of pursuing its own defense, and (2) where the insurance company expends costs to defend an action later determined not to be within the terms of the insurance policy. *Id.* at 21-22. Further, the high

court held that "a declaratory judgment action is a special proceeding pursuant to R.C. 2505.02 and, therefore, an order entered therein which affects a substantial right is a final appealable order." *Id.* at paragraph two of the syllabus.

{¶8} In this case, the trial court declared that ABCO must indemnify and assume the defense of DunnWell pursuant to the parties' subcontractor agreement, and it certified the judgment pursuant to Civ.R. 54(B). Accordingly, ABCO has appealed from a final, appealable order; and this Court has jurisdiction to consider ABCO's appeal.

{¶9} The trial court did not issue an express declaration as to whether West Bend has the duty to defend DunnWell pursuant to the additional insured provision of the insurance policy; instead, the trial court denied the competing motions for summary judgment on this issue upon finding that genuine issues of material fact existed. This Court concludes that this too constitutes a final, appealable order from which DunnWell can appeal.

{¶10} Normally, the denial of a motion for summary judgment is not a final, appealable order. *Hunt v. Alderman*, 9th Dist. Summit No. 27416, 2015-Ohio-4667, ¶ 9. Moreover, this Court has held that an order entering judgment in a declaratory judgment action which fails to declare the parties' rights and obligations is not final and appealable. *Bowers v. Craven*, 9th Dist. Summit No. 25717, 2012-Ohio-332, ¶ 11. Where the denial of a motion for summary judgment in the context of declaratory judgment gives rise, however, to the reasonable and logical inference that one party has in fact prevailed, the requirements of finality are satisfied. *See Indiana Ins. Co. v. Alloyd Insulation Co.*, 2d Dist. Montgomery No. 18979, 2002-Ohio-3916, ¶ 4 (assuming jurisdiction to review the trial court's order denying summary judgment that "in the process suggested that its negative ruling supported a positive inference that [the insurance company] had a duty of coverage.").

{¶11} In this case, DunnWell/Travelers and ABCO/West Bend had competing motions for summary judgment, both seeking a declaration regarding whether West Bend had a duty under the terms of its insurance policy to defend and indemnify DunnWell. Although the trial court denied both motions on this issue, the court's ruling gives rise to the reasonable, positive inference that West Bend need not defend DunnWell in the underlying negligence suit. DunnWell has no legal recourse to compel West Bend to provide a defense, even under a reservation of rights, leaving it in a position where it must either absorb the full cost of its own defense and expend additional costs to continue to pursue reimbursement after the negligence action is fully disposed, or be induced to settle the underlying suit to avoid the costs of a defense. Either scenario impacts the substantial rights recognized by the Ohio Supreme Court in *Gen. Acc. Ins., supra*, when it recognized the finality of declarations regarding an insurance company's duty to defend an insured. Finally, because the trial court in this case certified its judgment pursuant to Civ.R. 54(B), this Court recognizes our jurisdiction to address the merits of the cross-appeal. *See Indiana Ins. Co.* at ¶ 4.

Summary Judgment Standard of Review

{¶12} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶13} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing

such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶14} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶15} The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

II.

### ABCO'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING DUNNWELL, LLC SUMMARY JUDGMENT ON THE ISSUE OF WHICH SUBCONTRACT AGREEMENT BETWEEN ABCO AND DUNNWELL WAS IN FORCE AT THE TIME OF THE NOVEMBER 14, 2010 FIRE.

{¶16} ABCO argues that the trial court erred by concluding that the March 3, 2009 subcontractor agreement was in effect at the time of the November 14, 2010 fire. This Court disagrees.

{¶17} DunnWell (the contractor) and ABCO (the subcontractor) executed a subcontractor agreement on March 3, 2009, whereby ABCO would perform certain work as delineated in Schedule A, which was attached to the contract. Schedule A, related to the 2009 contract, contained the primary heading "Work" and the subheading "Kitchen Exhaust Cleaning." On September 7, 2010, DunnWell and ABCO executed another subcontractor agreement, whereby ABCO would perform certain work as delineated in Schedule A, which was attached to that contract. Schedule A related to the 2010 contract contained the primary heading "Scope of Work & Pricing" and the subheading "Fire Protection Service." Except for the content of the various schedules, the two contracts contained identical provisions, including an integration/merger clause which stated that the contracts embodied the parties' entire agreement and "supersede[d] all prior negotiations, agreements and understandings relating to the subject matter hereof." The contracts also each contained a choice of law provision requiring that "[a]ll matters relating to the validity, performance or interpretation of this Agreement shall be governed by the laws of the State of North Carolina[.]" The parties do not dispute the propriety of the application of North Carolina law to the interpretation of these contracts. This Court, therefore, will consider this issue within the context of North Carolina law.

{¶18} ABCO argues that a genuine issue of material facts exists regarding whether the 2010 contract superseded the 2009 contract based on the deposition testimony of one of its representatives who testified that ABCO and DunnWell only maintained one active contract at a time. ABCO further argues that, because the 2010 contract does not delineate the work required

relating to kitchen exhaust cleaning, then all kitchen exhaust cleaning performed by ABCO on behalf of DunnWell was done on a case-by-case basis and not subject to any written contract provisions. This Court is not persuaded by ABCO's argument given the plain language of the contracts which negates the need to consider extrinsic evidence such as the ABCO representative's testimony regarding the meaning of the contracts.

{¶19} The Supreme Court of North Carolina recognizes that a reviewing court considers a lower court's interpretation of a contract de novo. *State v. Philip Morris USA Inc.*, 363 N.C. 623, 631 (2009). That court set out the principles of contract interpretation as follows:

> Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract. Intent is derived not from a particular contractual term but from the contract as a whole. However, we are also mindful that in reviewing the entire agreement, our task is not to find discord in differing clauses, but to harmonize all clauses if possible. Furthermore, when the terms of a contract are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written, and enforce[d] * * * as the parties have made it.

(Internal quotations and citations omitted.) *Philip Morris* at 631-632.

{¶20} In this case, DunnWell and ABCO entered into a subcontractor agreement on March 3, 2009, for the express work purpose of "kitchen exhaust cleaning." Schedule A of the 2009 agreement clearly details the type of duties entailed in kitchen exhaust cleaning. On September 7, 2010, the parties executed another subcontractor agreement for the express work purpose of "fire protection services." Schedule A of the 2010 agreement clearly details the type of duties entailed in fire protection services, and those duties are separate and distinct from the duties enumerated in the 2009 agreement. Except for the work identified in Schedule A of each contract, the agreements are identical. Although both agreements contain integration/merger clauses as set out above, the "subject matter" of each contract differed in terms of the work each

governed. The underlying negligence complaint against DunnWell and ABCO alleges breaches in the parties' duties arising out of kitchen exhaust cleaning at the Macaroni Grill.

{¶21} Based on the plain language of the 2009 subcontractor agreement, it is clear that the parties intended that contract to govern work performed by ABCO on behalf of DunnWell as it related to kitchen exhaust cleaning. By contrast, the plain language of the 2010 agreement indicates the parties' intent that that contract governs a separate and distinct type of work, specifically fire prevention services. As the two agreements governed different "subject matter[s]," by its plain and unambiguous language, the 2010 agreement did not supersede the 2009. As a review of the plain language of the agreements resolves this matter, this Court shall not engage in further construction or consideration of any extrinsic evidence. Accordingly, the trial court did not err by concluding that the 2009 subcontractor agreement was in effect at the time of the fire and that the 2010 agreement had not superseded it. ABCO's first assignment of error is overruled.

## ABCO'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING DUNNWELL, LLC SUMMARY JUDGMENT ON THE ISSUE OF INDEMNIFICATION PURSUANT TO THE SUBCONTRACT.

## ABCO'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FINDING THAT THE DUNNWELL, LLC CONTRACTUAL INDEMNIFICATION AGREEMENT DOES NOT VIOLATE NORTH CAROLINA'S ANTI-INDEMNITY STATUTE.

{¶22} ABCO consolidates its discussion relating to the second and third assignments of error and argues that the trial court erred by concluding that the indemnity provision of the 2009 subcontractor agreement does not violate North Carolina's anti-indemnity statute and that ABCO

was, therefore, required to indemnify and defend DunnWell in the underlying action. This Court agrees in part, and disagrees in part.

**{¶23}** These assignments of error implicate a two-part analysis. First, this Court must determine whether the indemnity provision in the parties' subcontractor agreement is void because it violates the North Carolina anti-indemnity statute. Second, assuming that the indemnity provision is not void, this Court must determine whether it applies in this case to require ABCO to indemnify DunnWell.

Anti-indemnity statute

**{¶24}** North Carolina's anti-indemnity statute is codified at N.C.G.S.A. § 22B-1 and states, in pertinent part:

> Any promise or agreement in, or in connection with, a contract or agreement relative to the * * * repair or maintenance of a building, structure, * * * or appliance, * * * purporting to indemnify or hold harmless the promisee * * * against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee * * * is against public policy and is void and unenforceable. Nothing contained in this section shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee * * * against liability for damages resulting from the sole negligence of the promisor * * *. This section shall not affect an insurance contract, workers' compensation, or any other agreement issued by an insurer * * *.

**{¶25}** In *Bridgestone/Firestone, Inc. v. Ogden Plaint Maintenance Co. of N.C.*, 144 N.C.App. 503 (2001), the North Carolina appellate court reviewed the language in two indemnity clauses and concluded that, based on the plain language of the provisions, they did not violate the state's anti-indemnity statute. 144 N.C.App. at 507-508. In both indemnity clauses in *Bridgestone*, the promisor agreed to indemnify and hold harmless the promisee for claims, judgments, and the like due to injuries arising out of the promisor's conduct or negligence. *Id.* Moreover, the first clause was held not to violate N.C.G.S.A. § 22B-1 even though it required the

promisor to indemnify the promisee "regardless of whether such claims are alleged to be caused by negligence, or otherwise, on the part of [the promisee]." *Id.* at 507. The appellate court implicitly recognized that the mere allegation of negligence by the promisee did not impute agreement by the promisor to indemnify the promisee for the promisee's own negligence. Accordingly, that clause did not render the indemnity provision void. Moreover, the North Carolina courts recognize that an illegal clause or provision in a clause in a contract may be severed to cure the defect. *Intl. Paper Co. v. Corporex Constructors, Inc.*, 96 N.C.App. 312, 315 (1989).

**{¶26}** The indemnity provision in the subcontractor agreement in this case states:

9. INDEMNITY. To the fullest extent permitted by law, Subcontractor agrees to defend, indemnify and save harmless DunnWell and its customers and their respective agents, servants, officers, directors, managers, members and employees (the "Indemnified Parties"), from and against any and all claims, costs, expenses or liabilities (including attorney's fees and expenses) ("Liabilities"), attributable to bodily injury, sickness, disease or death, or damage to or destruction of property (including loss of use thereof), caused by, arising out of, resulting from, or occurring in connection with the performance of the Work by Subcontractor, its subcontractors and suppliers, or their agents, servants or employees. Subcontractor further agrees to defend, indemnify and save harmless the Indemnified Parties from and against any all Liabilities arising out of, resulting from or occurring in connection with a breach or non-fulfillment by Subcontractor of any representation, covenant, warranty or agreement contained herein.

Should a customer or any other person or entity assert a claim or institute a suit, action or proceedings against DunnWell involving the manner or sufficiency of the performance of the Work, Subcontractor shall upon request of DunnWell promptly assume the defense of such claim, suit, action or proceeding at Subcontractor's expense, and Subcontractor shall indemnify and save harmless DunnWell as well as anyone else to be defended, indemnified and held harmless by DunnWell and its or their agents, servants and employees, from and against any liability, loss, damage, or expense arising out of or related to such claim, suit, action, or proceeding.

**{¶27}** The subcontractor agreement defines "Work" as the work that ABCO was obligated to perform and complete according to Schedule A appended to the agreement.

**{¶28}** Upon review of the indemnity provision, the plain language indicates that DunnWell seeks indemnity and defense solely for matters arising out of ABCO's negligence and acts, not its own negligence. As the provision does not require ABCO to indemnify DunnWell for DunnWell's negligence, it is not void as against public policy and does not violate North Carolina's anti-indemnity statute.

**{¶29}** This does not end the inquiry, however. This Court must further determine whether the indemnity provision in the parties' subcontractor agreement is applicable under these circumstances to require ABCO to indemnify DunnWell and assume its defense.

Defense

**{¶30}** The Supreme Court of North Carolina has held:

> [T]he insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular [agreement]. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the [agreement], then the insurer has a duty to defend, whether or not the insured is ultimately liable. Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend. Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its [agreement], the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage.

*Waste Mgt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 (1986). The North Carolina courts use the "comparison test," whereby the allegations in the complaint are taken as true and compared to the language in the agreement regarding coverage to determine whether the allegations arguably implicate coverage and, therefore, the duty to defend. *Kubit v. MAG Mut. Ins. Co.*, 210 N.C.App. 273, 278 (2011), citing *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 6-7 (2010). In addition, North Carolina subscribes to a "hybrid" approach, whereby "if the 'pleadings allege multiple claims, some of which may be covered by

the insurer and some of which may not, the *mere possibility* the insured is liable, and that the potential liability is covered, may suffice to impose a duty to defend.'" *Kubit*, 210 N.C.App. at 278, quoting *Bruce – Terminix Co. v. Zurich Ins. Co.*, 130 N.C.App. 729, 735 (1998) (emphasis added).

{¶31} In this case, the plain language of the indemnity provision requires ABCO to defend DunnWell against all claims attributable to damage arising out of ABCO's work or its breach of any warranty under the subcontractor agreement. Lexington/MAC alleged claims against DunnWell premised on negligence going to the underlying performance of the kitchen exhaust cleaning, i.e., the on-site work, as well as breaches of various warranties going to the performance of the work. Although Lexington/MAC alleged a direct claim of negligent misrepresentation against DunnWell, alleging that it provided reports that misrepresented the efficacy of the cleaning and inspections performed at the restaurant, the other four counts constitute derivative claims. Those counts include negligent hiring/supervision, breach of the warranty to perform (kitchen exhaust cleaning) in a workmanlike manner, breach of contract by failing to use reasonable care in the performance of the work or in overseeing the subcontractor's work, and breach of the express and implied warranties of performing the work in a workmanlike manner. These four counts allege damage arising out of ABCO's negligence or breaches associated with its performance of the underlying work. In other words, because ABCO performed all on-site work (including cleaning and inspection pursuant to Schedule A appended to the 2009 subcontractor agreement), DunnWell's liability for damages as a result of the fire can only arise out of its oversight of the work. *See Thomas v. Weddle*, 167 N.C.App. 283, 290 (2004) (recognizing claims of negligent supervision and respondeat superior as derivative claims).

**{¶32}** As Lexington/MAC alleged claims against DunnWell attributable to damage arising out of ABCO's performance, ABCO is obligated to defend DunnWell pursuant to the plain language of the indemnity provision in the parties' subcontractor agreement. Moreover, although the underlying complaint alleges a direct claim of negligence (negligent misrepresentation) against DunnWell, ABCO is nevertheless obligated to provide a full defense to DunnWell pursuant to North Carolina's adherence to the "hybrid" approach to defense. *See Kubit*, 210 N.C.App. at 278. Accordingly, the trial court did not err when it concluded that no genuine issues of material fact existed with regard to ABCO's duty to defend DunnWell in the underlying action.

Indemnification

**{¶33}** "The difference in scope between the duty to defend and the duty to indemnify is based on the source of the factual narrative." *Harleysville Mut. Ins. Co.*, 364 N.C. at 7, citing *Waste Mgt.*, 315 N.C. at 691. While the duty to defend arises out of the facts as alleged and taken as true, "in determining whether an insurer has a duty to indemnify, the facts as determined at trial are compared to the language of the [agreement]. If the [agreement] provides coverage for the facts as found by the trier of fact, then the insurer has a duty to indemnify." *Harleysville Mut. Ins. Co.*, 364 N.C. at 7.

**{¶34}** Here, absent proof of ABCO's liability which might give rise to DunnWell's derivative liability, it is premature to determine whether ABCO has a duty to indemnify DunnWell pursuant to the indemnity provision of the parties' subcontractor agreement. Accordingly, the trial court erred to the extent that it concluded at this time that ABCO is required to indemnify DunnWell.

Conclusion

{¶35} As ABCO will be obligated to indemnify DunnWell only if the evidence adduced at trial proves that ABCO's work caused the fire and property damage and that DunnWell is derivatively liable, ABCO's second and third assignments of error as they relate to indemnification are sustained. As they relate to the validity of the indemnification provision pursuant to N.C.G.S.A. § 22B-1 and the issue of ABCO's duty to defend DunnWell, ABCO's second and third assignments of error are overruled.

## DUNNWELL/TRAVELERS CROSS-ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN FAILING TO FIND THAT, AS A MATTER OF LAW, WEST BEND OWES DUNNWELL DEFENSE IN THE PROPERTY DAMAGE SUIT PURSUANT TO THE ADDITIONAL INSURED ENDORSEMENT IN THE WEST BEND POLICY ISSUED ABCO.

{¶36} DunnWell and Travelers argue that the trial court erred by denying its motion for summary judgment on the issues of defense and indemnity under the West Bend insurance policy, and by failing to declare that West Bend has a duty to defend and indemnify DunnWell in the underlying negligence action. This Court agrees in part, and disagrees in part.

{¶37} The 2009 subcontractor agreement, which this Court previously determined was in effect at the time of the fire, contains the following provision:

8. INSURANCE. Before commencing the Work and until completion and final acceptance thereof, Subcontractor shall obtain and maintain, at its expense, at least the insurance coverage specified in Schedule B attached hereto, all from companies and in form and substance acceptable to DunnWell. Subcontractor agrees to name DunnWell as an additional insured on all liability insurance coverages and that such insurance shall be primary to any coverages of DunnWell. As a condition to any payment for the Work, Subcontractor shall furnish a certificate, satisfactory to DunnWell, from each insurance company showing the required insurance to be in force and stating that the insurance will not be canceled or changed except upon at least thirty (30) days' prior written notice thereof to DunnWell. If Subcontractor fails at any time to secure or maintain at least the insurance coverages specified in Schedule B attached hereto, DunnWell may (but shall have no obligation to) obtain such insurance on behalf of Subcontractor, and DunnWell may either (a) receive a refund from Subcontractor for the full amount paid by DunnWell for such insurance or (b)

withhold the full amount paid by DunnWell for such insurance from any future payments due to Subcontractor. The foregoing remedies shall be in addition to any and all other remedies available to DunnWell at law or in equity.

{¶38} West Bend's insurance policy covering ABCO contains an additional insured – contractor's blanket endorsement including "as an additional insured any person or organization whom you [ABCO] are required to add as an additional insured on this policy under a written contract or written agreement." The additional insured endorsement contains certain limitations on and exceptions to coverage in pertinent part as follows:

B. The insurance provided to the additional insured is limited as follows:

1. That person or organization is only an additional insured with respect to liability arising out of:

* * *

b. "Your work" for that additional insured; or

c. Acts or omissions of the additional insured in connection with the general supervision of "your work."

* * *

3. Except when required by written contract or written agreement, the coverage provided to the additional insured by this endorsement does not apply to:

a. "Bodily injury" or "property damage" occurring after:

(1) All work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

b. "Bodily injury" or "property damage" arising out of acts or omissions of the additional insured other than in connection with the general supervision of "your work."

{¶39} Section I, Coverage A[:] Bodily Injury and Property Damage Liability, of the West Bend Commercial General Liability Coverage Form sets out the scope of certain coverage under the policy. The parties refer to the relevant coverage provisions under subsection 1 by the subheading "Insuring Agreement." Unless some limitation or exception applies, West Bend promised pursuant to the Insuring Agreement in the policy that

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

{¶40} As this insurance policy was issued to an Ohio company (ABCO) who performed the cleaning services in Ohio, which work gave rise to the subject matter of the contract (i.e., liability coverage for damages sustained in the fire), this Court applies Ohio law to the issues raised in the cross-appeal. *See Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 44-45 (1986).

{¶41} The Ohio Supreme Court applies the following propositions of law when interpreting the meaning of insurance policies:

> An insurance policy is a contract whose interpretation is a matter of law. *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6. The fundamental goal when interpreting an insurance policy is to ascertain the intent of the parties from a reading of the policy in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner designed to give the contract its intended effect. *Burris v. Grange Mut. Cos.*, 46 Ohio St.3d 84, 89 (1989). Words and phrases must be given their plain and ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.
>
> We have held that provisions in an insurance contract that are reasonably susceptible of more than one interpretation will be construed liberally in favor of the insured. *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus. *See also Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 13. This rule, however, will not be applied so as to provide an unreasonable interpretation of the words of the policy. *Cincinnati Ins. Co. v. CPS Holdings,*

*Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 8, citing *Morfoot v. Stake*, 174 Ohio St. 506 (1963), paragraph one of the syllabus.

(Internal quotations omitted.) *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, ¶ 8-9.

**{¶42}** An additional insured endorsement in a policy is construed as part of the policy and interpreted according to the "plain and ordinary meaning of the words used to ascertain the intent of the parties to the contract." *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, ¶ 19, citing *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, ¶ 9. "An exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Internal citations and quotations omitted) *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 11. Moreover, "a defense based on an exception or exclusion in an insurance policy is an affirmative one, and the burden is cast on the insurer to establish it." *Continental Ins. Co. v. Louis Marx Co., Inc.*, 64 Ohio St.2d 399, 401 (1980).

**{¶43}** The trial court ruled that there were genuine issues of material fact regarding "whether or not DunnWell is entitled to insurance coverage under the West Bend insurance policy." As the insurance coverage in this case included both the duty to defend and the duty to indemnify, the trial court effectively denied that West Bend had a duty to defend, while deferring the issue of the insurance company's duty to indemnify for trial.

Defense

**{¶44}** It is well established that "the duty to defend is broader than and distinct from the duty to indemnify." *Ward*, 2011-Ohio-3176, at ¶ 19, citing *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, ¶ 19. "'The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the

scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make a defense, regardless of the ultimate outcome of the action or its liability to the insured.'" *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 178-179 (1984), quoting *Motorists Mut. v. Trainor*, 33 Ohio St.2d 41 (1973), paragraph two of the syllabus. The inherent duty to defend clearly arises "where the pleadings unequivocally bring the action within the coverage afforded by the policy," and it may otherwise arise where the allegations "state a claim which is potentially or arguably within the policy coverage, or [where] there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded[.]" *Willoughby Hills*, 9 Ohio St.3d at 180. Therefore, the insurance company has a duty to defend its insured whenever the allegations in the complaint state a claim that "arguably" falls within the coverage. *Harrison* at ¶ 19. However, the insurer has no duty to defend against any claim that is "clearly and indisputably outside the contracted policy language." *CPS Holdings* at ¶ 6, citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 113 (1987); *see also Harrison*, 2007-Ohio-4948, at ¶ 19; *Maxum Indemn. Co. v. Selective Ins. Co. of South Carolina*, 9th Dist. No. 11CA0015, 2012-Ohio-2115, ¶ 17 (holding that "once the insurer is able to establish that there is no set of facts that would bring the allegations of the complaint within coverage of its policy, its duty to defend is extinguished.").

**{¶45}** Moreover, where a complaint alleges multiple claims against an insured, the insurance company has a duty to defend against all claims based on the same occurrence, even if it is contractually obligated to the insured for fewer than all the claims. *Am. Chem. Soc. v. Leadscope, Inc.*, 10th Dist. Franklin No. 04AP-305, 2005-Ohio-2557, ¶ 8, citing *Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St.3d 78, 80 (1986) (referring to the "one claim-all claims"

principle). "Only if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action." *Am. Chem. Soc.* at ¶ 8, citing *Wedge Prods., Inc. v. Hartford Equity Sales Co.*, 31 Ohio St.3d 65 (1987).

{¶46} The Insuring Agreement provision is applicable to the additional insured endorsement, as the endorsement constitutes a part of the policy. The plain language of the Insuring Agreement provision imposes on West Bend a duty to defend an insured against suits "seeking" damages covered by the policy. By virtue of the additional insured endorsement, DunnWell is an insured under the policy.

{¶47} Four of the five claims alleged by Lexington/MAC against DunnWell are based on property damage arising out of negligence that allegedly occurred during the kitchen exhaust cleaning process for which ABCO was under subcontract with DunnWell to perform. The first four claims against DunnWell allege claims of general negligence (including negligent hiring, training, and supervision), breach of warranty to perform in a workmanlike manner, breach of contract for failure to use reasonable care in performing the kitchen exhaust cleaning and/or overseeing the work, and breach of express and implied warranties to ensure that all work was done in a workmanlike manner. All four of these claims are premised on the quality of the work performed on site at the Macaroni Grill. Only ABCO's agents performed kitchen exhaust cleaning on site. Accordingly, DunnWell's liability for these claims can only be derivative, rather than direct. Moreover, the property damage alleged in the complaint arose out of the same occurrence, i.e., negligent performance of kitchen exhaust cleaning on site. The insurance policy expressly covers DunnWell for ABCO's work and matters related to DunnWell's acts or omissions in connection with supervision of ABCO's work. As these claims arguably fall within the policy coverage, West Bend has a duty to defend DunnWell against all claims alleged against

it by Lexington/MAC. Accordingly, the trial court erred when it concluded that genuine issues of material fact existed with regard to West Bend's duty to defend DunnWell in the underlying action.

Indemnity

{¶48} There is a significant distinction between the duty to defend and the duty to indemnify.[1] While the duty to defend arises when the allegations in the complaint arguably fall within the policy's coverage, "the duty to indemnify, on the other hand, arises only if liability in fact exists under the policy." *Elevators Mut. Ins. Co. v. Scassa*, 9th Dist. Wayne No. 03CA0045, 2004-Ohio-3428, ¶ 12, quoting *Chemstress Consultant Co., Inc. v. Cincinnati Ins. Co.*, 128 Ohio App.3d 396, 402 (9th Dist.1998). Before the trial court can determine whether an insurance company has the duty to indemnify an insured, it must have proof of the facts underlying the complaint. *Id.*

{¶49} The duty to indemnify in this case implicates two issues implicitly recognized by the trial court. The trial court recognized that West Bend would only have a duty to indemnify DunnWell if (1) no exclusion from coverage provision was applicable, and (2) ABCO's negligence caused the fire. With regard to the first issue, it concluded that genuine issues of material fact existed as to whether "the pizza oven was put to its intended use by MAC for several weeks before the fire occurred[,]" i.e., whether the coverage exclusion in section 3.a.(2) of the additional insured endorsement applied. DunnWell argues that the trial court improperly relied on this exclusionary provision because it is inapplicable.

---

[1] DunnWell is not seeking indemnification for its direct negligence, if any. Without conceding liability, DunnWell properly recognizes that it would not be entitled to indemnification for any of its own negligence.

{¶50} As previously stated, this Court looks to the plain language of the endorsement to determine whether this exclusion is clearly intended to apply in these circumstances. *See Hunter*, 2011-Ohio-1818, at ¶ 11. In this case, the trial court disregarded the introductory language of the endorsement in section B.3., which gives rise to certain exclusions "[e]xcept when required by written contract or written agreement * * *."

{¶51} Here, ABCO was required by the terms of the parties' subcontractor agreement to add DunnWell as an additional insured and provide coverage in the types and amounts enumerated in Schedule B of the subcontractor agreement. As there was a contractual obligation to provide insurance coverage for DunnWell, the exceptions to the endorsement coverage are not applicable. Accordingly, the trial court erred by concluding that it could not determine whether DunnWell was excluded from coverage in the absence of a determination as to whether or not Macaroni Grill had put its pizza ovens to their intended use after ABCO cleaned them and prior to the fire. Based on the plain language of the endorsement, the exclusion noted by the trial court is not applicable as a matter of law because the ABCO/DunnWell subcontractor agreement obviated the exclusions in the insurance endorsement and obligated West Bend to provide coverage to DunnWell. This does not end the inquiry, however.

{¶52} The second issue germane to the cross-assignment of error is whether ABCO's negligence caused the property damage. In this case, absent proof of ABCO's liability which might give rise to DunnWell's derivative liability, it is premature to determine whether West Bend is obligated to indemnify DunnWell under the terms of the insurance policy. Accordingly, the trial court did not err by concluding that genuine issues of material fact exist precluding a declaration that West Bend owes DunnWell indemnity at this time. As West Bend will be obligated to indemnify DunnWell if the evidence at trial proves that ABCO's work caused the

fire and property damage and that DunnWell is derivatively liable, DunnWell's cross-assignment of error is sustained in part and overruled in part.

### III.

**{¶53}** ABCO's first assignment of error is overruled. ABCO's second and third assignments of error are overruled as they relate to the validity of the indemnification provision in the parties' subcontractor agreement and the issue of the duty to defend. ABCO's second and third assignments of error are sustained as they relate to the duty to indemnify DunnWell. DunnWell's cross-assignment of error is sustained as it relates to West Bend's duty to defend, but overruled as it relates to the issue of indemnification. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

THOMAS J. CONNICK, Attorney at Law, for Appellant/Cross-Appellee.

D. JOHN TRAVIS, GARY L. NICHOLSON, and RICHARD C.O. REZIE, Attorneys at Law, for Appellees/Cross-Appellants.

ROBERT P. LYNCH, Attorney at Law, for Appellee/Cross-Appellant.

MICHAEL R. HENRY and MATTHEW R. PLANEY, Attorneys at Law, for Plaintiff/Cross-Appellee.